DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SIFACO GROUP, S.A., THIERRY PARISOT,** and **DAVID MORTON,**
Appellants,

v.

**GEORGE MARGIOUKLA** and **JAIME FLOREZ-ESTRADA,**
Appellees.

No. 4D2025-2497

[July 15, 2026]

Appeal of nonfinal order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David Alan Haimes, Judge; L.T. Case No. 062024CA017120AXXXCE.

Christopher Kammerer and Havan Clark of Rabin Kammerer Johnson, West Palm Beach, for appellants.

Molly Schindler, Brandon K. Breslow and Kristin A. Norse of Kynes, Markman & Felman, P.A., Tampa, for appellees.

PER CURIAM.

Sifaco Group, S.A., Thierry Parisot, and David Morton appeal a nonfinal order denying their motion to dismiss for lack of personal jurisdiction. We affirm as to Sifaco because it contractually agreed to submit to jurisdiction in Florida. However, we reverse as to Parisot and Morton because they were not parties to the contract in their individual capacities, and the plaintiffs failed to establish any other basis for jurisdiction over them.

## I.    Background

Sifaco is a Belgian company with headquarters in Belgium. Parisot and Morton are Sifaco officers and Belgian residents. The plaintiffs, George Margioukla and Jaime Florez-Estrada, are Florida residents.

Sifaco and the plaintiffs entered into a business venture for selling, marketing, and distributing Sifaco's tobacco products in the United States. The plaintiffs allege that Sifaco, through Parisot, promised to fund the venture during a five-year development period.

The plaintiffs incorporated Dynamis Ventures, Inc. in Florida for the purpose of the venture. Dynamis, Sifaco, and the plaintiffs subsequently executed a shareholders' agreement. The majority of Dynamis's stock was held by Sifaco, with the remainder held by the plaintiffs. Parisot and Morton were appointed to Dynamis's board of directors, and the plaintiffs were named as officers. Both plaintiffs signed an employment agreement with Dynamis for a five-year period, during which the company could terminate their employment only for cause.

According to the plaintiffs, Sifaco ceased funding Dynamis before the five-year period ended and restricted the plaintiffs' ability to secure third-party investments, causing Dynamis to become insolvent and constructively terminating the plaintiffs' employment.

The plaintiffs sued Dynamis, Sifaco, Parisot, and Morton in Broward County circuit court. The complaint alleges causes of action for breach of the employment agreements (against Dynamis and Sifaco as joint employers), breach of the shareholders' agreement (against Sifaco), violation of the Private Sector Whistleblower's Act (against Sifaco), fraudulent inducement (against Sifaco and Parisot), negligent misrepresentation (against Sifaco and Parisot), tortious interference with contractual relationships (against Parisot and Morton), and breach of fiduciary duty (against Parisot and Morton).

The complaint alleges that the defendants are subject to personal jurisdiction in Florida pursuant to the shareholders' agreement's section 9.9(a):

> Each of the parties to this Agreement irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of any Florida State court . . . in any action or proceeding arising out of or relating to this Agreement . . . .

Immediately preceding section 9.9(a), section 9.8 states that the shareholders' agreement shall be "governed and construed" under Florida law.

Sifaco, Parisot, and Morton moved to dismiss the complaint for lack of personal jurisdiction. (Dynamis has not disputed personal jurisdiction and is not a party to this appeal.) The defendants argued that the shareholders' agreement is insufficient to confer personal jurisdiction over them because the agreement does not meet the requirements of sections

685.101 and 685.102, Florida Statutes (2019).  Parisot and Morton also argue they are not bound by the agreement because they were not parties in their individual capacities.

The plaintiffs responded that section 9.9(a) is presumptively valid and enforceable, and Parisot and Morton are bound by the agreement in their capacities as Dynamis directors.

As an alternative basis for jurisdiction over Parisot and Morton, the plaintiffs claimed the complaint alleged sufficient facts to establish jurisdiction for causes of action arising from Parisot's and Morton's acts in conducting business in Florida and/or committing tortious acts in Florida.

Parisot and Morton replied that the corporate shield doctrine precluded the plaintiffs from establishing jurisdiction over Parisot and Morton because all of their relevant actions were taken in a representative capacity, either as Sifaco officers or Dynamis directors.

The plaintiffs responded that the corporate shield doctrine did not apply because the complaint alleged that Parisot and Morton had personally committed intentional torts directed at Florida residents.

Each of the defendants also submitted an affidavit disputing they had sufficient minimum contacts with Florida to satisfy due process requirements.  The plaintiffs responded that all three defendants had purposefully availed themselves of conducting business in Florida, such that they should have foreseen being sued here.

The trial court agreed with the plaintiffs' arguments and denied the motion to dismiss.  The defendants timely appealed.

## II.  Analysis

We review the trial court's order denying the defendants' motion to dismiss de novo.  *Karisma Hotels & Resorts Corp. Ltd. v. Hoffman*, 400 So. 3d 10, 14 (Fla. 4th DCA 2025).

Determining whether a Florida court can exercise personal jurisdiction over a nonresident defendant generally involves a two-step analysis: (1) whether the complaint sufficiently alleges a basis for jurisdiction under Florida's long-arm statute—section 48.193, Florida Statutes (2019)— either by tracking section 48.193's applicable language or alleging sufficient facts to show that the defendant's actions fit within one of its

subsections; and (2) whether the defendant has sufficient minimum contacts with Florida to allow a Florida court to exercise jurisdiction consistent with due process requirements. *Id.* (citing *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989)).

## A. Consent Under the Shareholders' Agreement

The plaintiffs' complaint alleges that the defendants are subject to personal jurisdiction pursuant to the shareholders' agreement's section 9.9(a), which provides that the parties "irrevocably and unconditionally" submit to Florida's jurisdiction for any action arising out of the agreement.

As a general rule, "an agreement alone is insufficient to confer personal jurisdiction on Florida courts." *Vyas v. Am. Van Lines, Inc.*, 430 So. 3d 135, 139 (Fla. 4th DCA 2026) (alteration and citation omitted). As an exception to this rule, section 48.193(1)(a)9., Florida Statutes (2019), provides that a nonresident defendant submits to Florida's jurisdiction by "[e]ntering into a contract that complies with s. 685.102," for any cause of action arising from that act. *See Vyas*, 430 So. 3d at 139 (alteration omitted).

To comply with section 685.102, a contract must contain a choice-of-law provision pursuant to section 685.101. § 685.102(1), Fla. Stat. (2019). Together, the two statutes provide that the contract must:

(1) contain a choice-of-law provision providing for the application of Florida law;

(2) contain a provision by which the defendant agrees to submit to the jurisdiction of Florida courts;

(3) involve consideration of at least $250,000;

(4) not violate the United States Constitution;

(5) either bear a substantial or reasonable relationship to Florida or have at least one of the parties be a resident of Florida, be incorporated under the laws of Florida, or maintain a place of business in Florida;

(6) not be "[f]or labor or employment" or relate to any transaction for "personal, family, or household purposes"; and

4

(7) if applicable, not conflict with section 671.105(2) or section 655.55.

§§ 685.101(1), (2), 685.102(1), Fla. Stat. (2019); *see also Vyas*, 430 So. 3d at 139; *Corp. Creations Enters. LLC v. Brian R. Fons Att'y at L. P.C.*, 225 So. 3d 296, 301 (Fla. 4th DCA 2017). If these two statutes' requirements are met, the court can exercise personal jurisdiction without conducting a separate minimum contacts analysis. *Vyas*, 430 So. 3d at 140; *Corp. Creations*, 225 So. 3d at 301.

The defendants argue that the shareholders' agreement does not meet the requirements of sections 685.101 and 685.102, and therefore does not confer personal jurisdiction over them under section 48.193(1)(a)9., because the agreement does not involve consideration of at least $250,000.

The $250,000 threshold is satisfied when the contract at issue is "in consideration of or relating to any obligation arising out of a transaction involving in the aggregate not less than $250,000." § 685.101(1), Fla. Stat. (2019). The threshold can be met either by cash consideration on the face of the contract or by transactions arising from or related to the contract. *Corp. Creations*, 225 So. 3d at 301–02.

Here, the $250,000 threshold is met because the complaint alleged Sifaco had provided more than $4 million in funding to Dynamis over the course of the business venture. Those transactions undoubtedly were related to the shareholders' agreement, which memorialized the venture and structured the parties' relationships. *See id.* (holding that an LLC's operating agreement met the threshold, even though each party made an initial capital contribution of only $60,000, because the plaintiff presented unrefuted proof of damages exceeding $250,000 arising from transactions related to the contract).

The defendants alternatively argue that the shareholders' agreement does not confer personal jurisdiction because the plaintiffs' claims do not arise from the agreement. *See* § 48.193(1)(a)9. (stating that a person is subject to personal jurisdiction in Florida "for any cause of action arising from . . . [e]ntering into a contract that complies with s. 685.102").

The term "arising from" as used in section 48.193 is broad and does not require proximate cause—a "direct affiliation," "nexus," or "substantial connection" between the causes of action and the relevant conduct is sufficient. *Kapila v. RJPT, Ltd.*, 357 So. 3d 241, 249 (Fla. 2d DCA 2023).

Here, even if the plaintiffs' claims do not arise directly from obligations imposed by the shareholders' agreement, the claims and the agreement are sufficiently connected because the agreement was part of the overall business venture. *See Corp. Creations*, 225 So. 3d at 300 (holding that the LLC's operating agreement conferred personal jurisdiction in an action for breach of a subsequent ownership redemption agreement because the action arose broadly from the parties' business relationship, which was created by the operating agreement).

Parisot and Morton argue that, even if the shareholders' agreement is sufficient to confer jurisdiction over Sifaco, the agreement does not confer personal jurisdiction over them because they were not parties to the agreement in their individual capacities. They note that the agreement was among Dynamis, Sifaco, and the plaintiffs, and Parisot had signed the agreement only in his capacity as a Sifaco officer.

As a general rule, a contract cannot be enforced against a person who is not a party to the contract and has not otherwise agreed to its terms. *E.g.*, *Drucker v. Duvall*, 61 So. 3d 468, 472 (Fla. 4th DCA 2011). The plaintiffs argue for an exception, relying on cases holding that a mandatory forum selection clause can be enforced against a non-party to the contract under certain circumstances. *See, e.g.*, *Venus Concept USA, Inc. v. Angelic Body, LLC*, 362 So. 3d 258, 263–64 (Fla. 2d DCA 2023); *E. Coast Karate Studios, Inc. v. Lifestyle Martial Arts, LLC*, 65 So. 3d 1127, 1129 (Fla. 4th DCA 2011); *Deloitte & Touche v. Gencor Indus., Inc.*, 929 So. 2d 678, 683 (Fla. 5th DCA 2006).

The plaintiffs' reliance on these cases is misplaced because statutes governing personal jurisdiction "must be strictly construed in order to guarantee compliance with due process requirements." *Astro Aluminum Treating Co., Inc. v. Inter Contal, Inc.*, 296 So. 3d 462, 466 (Fla. 4th DCA 2020) (citation omitted); *see SANDP Sols., Inc. v. Silver Logic, LLC*, No. 21-80949-CIV, 2022 WL 7049243, at *8 (S.D. Fla. Jan. 14, 2022) (stating that sections 685.101 and 685.102 must be strictly construed and any doubts about their applicability must be resolved in favor of the defendant).

Sections 685.101 and 685.102, by their plain and unambiguous language, permit enforcement of a contractual consent to personal jurisdiction only by a party to the contract against another party. *SANDP Sols.*, 2022 WL 7049243, at *8 (citing *Storm v. Carnival Corp.*, No. 20-22227-Civ, 2020 WL 7415835, at *5 n.2 (S.D. Fla. Dec. 18, 2020)). Section 685.102(1) states that an action can be maintained against a nonresident person or other entity if the action is based on a contract that meets section 685.101's requirements and by which "*such person or other entity*

6

. . . agrees to submit to the jurisdiction of the courts of this state" (emphasis added). Similarly, section 685.101(1) states that "[t]he parties to any contract" which meets certain requirements may agree that Florida law will govern the contract. *See also* § 48.193(1)(a)9. (stating that a person submits to Florida's jurisdiction by "personally or through an agent" entering into a contract that complies with section 685.102).

In summary, we hold that the shareholders' agreement meets the requirements of sections 685.101 and 685.102, and the plaintiffs' claims are sufficiently related to the agreement, such that the parties to the agreement are subject to personal jurisdiction under section 48.193(1)(a)9. This holding leads us to affirm the trial court's order denying the defendants' motion to dismiss as to Sifaco, without separately considering whether Sifaco had sufficient minimum contacts with Florida to satisfy due process. *See Vyas*, 430 So. 3d at 140; *Corp. Creations*, 225 So. 3d at 301. However, we agree with Parisot and Morton that the shareholders' agreement does not confer jurisdiction over them because they were not parties to the agreement in their individual capacities.

## B. Conduct in Florida

As an alternative basis for personal jurisdiction over Parisot and Morton, the plaintiffs claim the complaint alleges sufficient facts to establish jurisdiction for causes of action arising from Parisot's and Morton's acts in "[o]perating, conducting, engaging in, or carrying on a business or business venture" and/or "[c]ommitting a tortious act" in Florida. § 48.193(1)(a)1., (1)(a)2., Fla. Stat. (2019). The plaintiffs argue that due process is satisfied because Parisot and Morton purposefully availed themselves of conducting business in Florida, such that they should have foreseen being sued here for claims arising from that activity. *See Walden v. Fiore*, 571 U.S. 277, 283–86 (2014); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985).

Parisot and Morton argue that the corporate shield doctrine precludes the plaintiffs from relying on Parisot's and Morton's alleged conduct in Florida to satisfy the long-arm statute or establish minimum contacts, because all of their relevant actions were taken in their capacities as Sifaco officers or Dynamis directors. *See Harrison v. NC3 Sys, Inc.*, 395 So. 3d 657, 663 (Fla. 6th DCA 2024) ("Under the corporate shield doctrine, the actions of a corporate employee in a representative capacity do not form the basis for jurisdiction over the corporate employee in their individual capacity." (citing *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993))); *see also Radcliffe v. Gyves*, 902 So. 2d 968, 972–73 (Fla. 4th DCA 2005) (holding that the corporate shield doctrine precluded the trial court from

considering the nonresident defendants' actions in Florida and connections with Florida in their capacities as members of a Florida corporation's board of directors in determining whether the trial court could exercise jurisdiction over them in their personal capacities).

An exception to the corporate shield doctrine exists where a corporate representative personally commits an intentional tort "expressly aimed at Florida" and "calculated to inflict a direct injury upon a resident of Florida," regardless of whether he is physically present within the state. *Harrison*, 395 So. 3d at 663–64 (citations omitted); *see LaFreniere v. Craig-Myers*, 264 So. 3d 232, 238–39 (Fla. 1st DCA 2018); *Edelstein v. Marlene D'Arcy, Inc.*, 961 So. 2d 368, 372 (Fla. 4th DCA 2007); *Oesterle v. Farish*, 887 So. 2d 412, 415 (Fla. 4th DCA 2004). To overcome the corporate shield doctrine's application based on this exception, the complaint must sufficiently state a cause of action for an intentional tort. *LaFreniere*, 264 So. 3d at 239 (citing *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002)); *see Oesterle*, 887 So. 2d at 415.

Here, the complaint attempts to allege causes of action for three intentional torts: fraudulent inducement (against Parisot only), tortious interference with contractual relations (against both Parisot and Morton), and breach of fiduciary duty (against both Parisot and Morton). However, the complaint's allegations are insufficient to state those causes of action.

## 1. Fraudulent Inducement

The plaintiffs' fraudulent inducement actions allege that Parisot induced them to enter into the venture with Sifaco by falsely promising that Sifaco would fund the venture for five years. The plaintiffs allege that Parisot knew or should have known his statements were false, and they reasonably relied on the statements in leaving their previous employment and entering into the venture.

"The elements of fraudulent inducement are: (1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party justifiably relied on the false statement to its detriment." *Yatak v. La Placita Grocery of Fort Pierce Corp.*, 383 So. 3d 497, 503 (Fla. 4th DCA 2024) (internal and external citations omitted); *Houri v. Boaziz*, 196 So. 3d 383, 393 (Fla. 3d DCA 2016).

Here, the plaintiffs fail to state a cause of action for fraudulent inducement for two reasons.

8

First, the plaintiffs' complaint fails to allege causation. The only statements allegedly made by Parisot occurred after the plaintiffs had left their previous employment and entered into the venture with Sifaco. So the plaintiffs could not have been relying on those statements when they took those actions. *See Houri*, 196 So. 3d at 393 (stating that a claim for fraudulent inducement "must be pled with particularity and must not only specifically identify a misrepresentation of fact but also identify when, where, or the manner in which it was made").

Second, a fraudulent inducement action cannot be based on a false promise to do something in the future, as opposed to a misrepresentation of a past or existing fact, unless the plaintiff alleges that the defendant had no intention of performing at the time the promise was made. *Wadlington v. Cont'l Med. Servs., Inc.*, 907 So. 2d 631, 632–33 (Fla. 4th DCA 2005). The plaintiffs' complaint does not affirmatively allege that Parisot had no intention of honoring his alleged promises regarding Sifaco's funding of Dynamis when he made those alleged promises.

## 2. Tortious Interference

The plaintiffs' tortious interference actions allege that Parisot and Morton had intentionally interfered with the plaintiffs' contractual employment relationships with Dynamis and Sifaco, as the plaintiffs' joint employers,[1] by causing Sifaco to cease funding to Dynamis and restricting Dynamis's ability to secure third-party investments, which rendered Dynamis insolvent and caused Dynamis to breach the plaintiffs' employment agreements by failing to pay their salaries.

"The elements of tortious interference with a contract or business relationship are: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385 (Fla. 4th DCA 1999).

---

[1] The defendants dispute that Dynamis and Sifaco were joint employers, but we accept the allegation as true for the purpose of determining whether the complaint sufficiently states a cause of action for tortious interference. *See, e.g., Swerdlin v. Fla. Mun. Ins. Tr.*, 162 So. 3d 96, 97 (Fla. 4th DCA 2014).

9

The plaintiffs fail to state a cause of action against Parisot and Morton for tortious interference with the plaintiffs' contractual relationships with Dynamis and Sifaco as their joint employers, because the complaint alleges that Parisot and Morton had made the decisions regarding Sifaco's funding of Dynamis in their capacities as Sifaco officers.

For a defendant's interference with a contractual relationship to be "unjustified," as required to state a tortious interference claim, the defendant must be a stranger to the relationship. *Salit*, 742 So. 2d at 386; *see also Palm Beach Cnty. Health Care Dist. v. Pro. Med. Educ., Inc.*, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009) (stating that a defendant is not a stranger to a contractual relationship if he has any control over how the relationship is conducted or any potential financial interest in how the contract is performed). Following from this principle, a contracting party's officer, director, or employee has a limited "privilege to interfere" with the contractual relationship. *Salit*, 742 So. 2d at 386. The privilege is destroyed where the officer, director, or employee "acts solely with ulterior purposes, without an honest belief that his actions would benefit the [contracting party], and [his] conduct concerning the contract [] is not in the [contracting party's] best interest." *Id.*

Parisot and Morton, as Sifaco officers, had a limited privilege to interfere with the plaintiffs' alleged contractual relationships with Dynamis and Sifaco as joint employers, and the plaintiffs do not allege that Parisot or Morton lacked an honest belief that their decisions regarding Sifaco's funding of Dynamis would benefit Sifaco, or that those decisions were not in Sifaco's best interest. Thus, the plaintiffs fail to allege that Parisot's and Morton's alleged interference with the contractual relationships was unjustified.

### 3. Breach of Fiduciary Duty

The plaintiffs' breach of fiduciary duty actions allege that Parisot and Morton, as Dynamis directors, breached their duties—owed to Dynamis and the plaintiffs as shareholders—to act in good faith and in Dynamis's best interest. Specifically, the plaintiffs allege that Parisot and Morton breached their fiduciary duties by deciding to cease funding to Dynamis and refusing to allow Dynamis to obtain third-party funding, which caused Dynamis to become insolvent and resulted in damages to the plaintiffs in the form of lost wages and future profits.

The elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary duty; (2) a breach of that duty; (3) damages to the plaintiff;

and (4) proximate cause. *Taubenfeld v. Lasko*, 324 So. 3d 529, 537–38 (Fla. 4th DCA 2021).

The plaintiffs fail to state a cause of action for breach of fiduciary duty for two reasons.

First, the complaint alleges that Parisot and Morton made the decisions regarding Sifaco's funding of Dynamis in their capacities as Sifaco officers, not Dynamis directors. The plaintiffs do not allege that Parisot and Morton, as Sifaco officers, owed any fiduciary duty to the plaintiffs.

Second, to the extent Parisot's and Morton's decisions regarding Dynamis's funding could be considered a breach of their fiduciary duties as Dynamis directors, the plaintiffs fail to state a direct claim in their individual capacities, as opposed to a derivative claim on behalf of Dynamis. *See DiSorbo v. Am. Van Lines, Inc.*, 354 So. 3d 530, 544 (Fla. 4th DCA 2023) (recognizing that "direct claims and derivative claims cannot be joined in the same action because they are brought in different capacities").

A direct action is one in which a shareholder seeks to enforce a right existing in him personally, while a derivative action is one in which a shareholder seeks to enforce a right existing in the corporation. *Strazzulla v. Riverside Banking Co.*, 175 So. 3d 879, 884 (Fla. 4th DCA 2015) (citing *Dinuro Invs., LLC v. Camacho*, 141 So. 3d 731, 738 (Fla. 3d DCA 2014)). To bring a direct action against a corporate director in an individual capacity, a shareholder must allege both: (1) a direct harm that does not flow from an initial harm to the company; and (2) a special injury, separate and distinct from any injury sustained by other shareholders. *Id.* (citing *Dinuro*, 141 So. 3d at 739–40).[2]

The plaintiffs fail to state a direct claim for breach of fiduciary duty against Parisot and Morton as Dynamis directors, because the plaintiffs fail to allege a direct harm. The relevant inquiry as to this prong is "whether the alleged wrongful conduct devalued the company as a whole or was directed specifically towards the individual plaintiff." *Dinuro*, 141 So. 3d at 736.

---

[2] An exception to this two-prong test exists where a shareholder alleges breach of a statutory or contractual duty that was owed to him individually, separate from a duty owed to the company and shareholders generally. *Strazzulla*, 175 So. 3d at 884 (citing *Dinuro*, 141 So. 3d at 740). The plaintiffs do not allege that Parisot or Morton owed any specific statutory or contractual duty to the plaintiffs personally.

In *Dinuro*, an LLC member asserted direct claims against the other LLC members for breach of the operating agreement and tortious interference. *Id.* at 733–34. The plaintiff alleged that the defendants intentionally caused the LLC to default on its mortgage loans, after which the defendants purchased the loans at a discount and foreclosed on the mortgaged properties, thereby depriving the LLC of its only assets. *Id.* at 733–34, 740. The Third DCA held that the plaintiff could not maintain a direct claim against the defendants because his alleged injury—his LLC share's lost value—was an indirect harm resulting from the overall devaluation of the company. *See id.* at 740.

By contrast, in *Strazzulla*, we held that the plaintiff shareholders sufficiently pled direct harm where they alleged that two directors had negligently or fraudulently induced the shareholders not to sell their stock, which later became essentially worthless, because that harm was direct to the shareholders and could not belong to the corporation. *See* 175 So. 3d at 882, 885.

Here, the plaintiffs allege that Parisot's and Morton's breach of their fiduciary duties caused Dynamis to become insolvent, which in turn resulted in damages to the plaintiffs in the form of lost wages and future profits. As in *Dinuro*, the alleged harm is not direct to the plaintiffs, because it flows from an initial harm to Dynamis, specifically the devaluation of the company as a whole. *See Dinuro*, 141 So. 3d at 736, 740.

In summary, the plaintiffs failed to establish jurisdiction over Parisot and Morton under section 48.193(1)(a) based on their conduct in Florida. The complaint alleges that all of Parisot's and Morton's relevant actions were taken in a representative capacity, and the complaint does not sufficiently allege that they personally committed any intentional torts to overcome the corporate shield doctrine. *See Harrison*, 395 So. 3d at 663–64; *LaFreniere*, 264 So. 3d at 239; *Oesterle*, 887 So. 2d at 415.[3]

---

[3] We also reject the plaintiffs' argument that Parisot and Morton are subject to personal jurisdiction in Florida because they used Dynamis as their "alter ego." Under the alter ego theory of personal jurisdiction, a nonresident defendant can be subject to jurisdiction in Florida if the plaintiff shows: (1) the defendant dominated and controlled a Florida corporation to the extent the corporation lacked an independent existence and was a mere instrumentality of the defendant; and (2) the defendant engaged in improper or fraudulent conduct in the formation or use of the corporation. *Parisi v. Kingston*, 314 So. 3d 656, 664 (Fla. 3d DCA 2021); *Abdo v. Abdo*, 263 So. 3d 141, 149 (Fla. 2d DCA 2018). Parisot and Morton cannot be subject to jurisdiction under this theory because

### III. Conclusion

We affirm in part and reverse in part the trial court's order denying the defendants' motion to dismiss. We affirm as to Sifaco because, in the shareholders' agreement, Sifaco agreed to submit to personal jurisdiction in Florida. However, we reverse as to Parisot and Morton because they were not parties to the shareholders' agreement in their individual capacities, and the corporate shield doctrine precludes the trial court from exercising jurisdiction over them based on their conduct in Florida.

*Affirmed in part, reversed in part, and remanded.*

GERBER, FORST and LOTT, JJ., concur.

*  *  *

***Not final until disposition of timely-filed motion for rehearing.***

---

they were not Dynamis shareholders in their individual capacities. Further, in their affidavits, Parisot and Morton denied that they exercised control over Dynamis's day-to-day operations, and the plaintiffs did not present any sworn proof in response. *See Karisma Hotels*, 400 So. 3d at 14 (citing *Venetian Salami*, 554 So. 3d at 502).